**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 06-2250**

───────────

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

JEHAD M. ALHINDI,

                Claimant - Appellant,

        v.

ABDURAHMAN M. ALAMOUDI,

                Defendant,

        v.

MOORE & VAN ALLEN; FATMA IDRIS,

                Parties in Interest.

───────────

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (1:03-cr-00513-CMH)

───────────

Argued: September 26, 2008        Decided: October 27, 2008

───────────

Before MICHAEL and MOTZ, Circuit Judges, and James C.
DEVER, III, United States District Judge for the Eastern
District of North Carolina, sitting by designation.

───────────

Affirmed by unpublished per curiam opinion.

**ARGUED:** Henry St. John FitzGerald, Arlington, Virginia, for Appellant. Gordon D. Kromberg, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this case arising out of a forfeiture order entered in a criminal case, a third party appeals the district court's denial of her motion to exclude certain property from the forfeiture order entered against the defendant. Because the Appellant is not a bona fide purchaser for value of that property, we affirm.

## I.

On July 30, 2004, Abdurahman M. Alamoudi pleaded guilty to three charges including engaging in prohibited financial transactions involving Libya, in violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1705 (2000). On that same day, the district court ordered Alamoudi to forfeit the $340,000 in cash that British authorities seized from him in London in August 2003 as well as an additional $570,000 of illegal proceeds he received from Libyan government officials to finance an assassination plot. In March 2005, after the Government was unable to recover the $570,000 of illegal proceeds from Alamoudi, the district court granted the government's motion for an order of forfeiture for substitute assets, including the real property known as 6325 Nancy Hanks Court ("the Nancy Hanks Property" or "the Property").

When the district court entered the order of forfeiture for substitute assets, Appellant Jehad Alhindi was the titled owner

3

of the Nancy Hanks Property. She had become the titled owner of the property on December 29, 2004, more than two months after Alamoudi had been arrested, convicted, and sentenced. Despite lacking legal title to the Property until the end of December 2004, Alhindi claims that she actually owned the property from the time Alamoudi purchased it in August 2003 due to an oral agreement she had with Alamoudi at or near that time. On April 1, 2005, she filed a petition pursuant to 21 U.S.C. § 853(n) (2000) asking the court to amend the order of forfeiture to exclude the Nancy Hanks Property.

At the hearing on her petition, Alhindi testified that she became interested in purchasing a house sometime after March 2003 but did not have the funds or credit to do so. She approached several friends to ask if they would help her buy a residence. Alhindi recounted that when she approached Alamoudi, who had previously provided financial and immigration support to her, he agreed that if she made all the payments to carry a house, he would help her finance its purchase. Alhindi and Alamoudi never reduced any agreement to writing, and Alamoudi did not provide Alhindi with any proof of ownership until after he was in jail.

Alhindi looked for and eventually found a house that she wished to purchase. On August 21, 2003, Alamoudi purchased the Property in his name only. Alamoudi was not present at the

4

closing but was represented by Kamal Nawash, to whom Alamoudi had given a special power of attorney. Alhindi also attended the closing but did not sign anything.

The purchase price of the Property was $380,000. The Property was purchased with a $3,000 earnest money deposit, a $76,523.21 down payment, and a loan of $304,000 from Emigrant Mortgage Company, Inc. ("Emigrant"). Alamoudi provided the earnest money, and a check bearing Alamoudi's name provided $76,000 of the down payment. Alhindi provided no money for the purchase although she testified that she repaid Alamoudi $3,000 in cash to reimburse him for the earnest money. Emigrant loaned money to Alamoudi only. The sales contract, the settlement statement, the deed, and the deed of trust for the Property each bore Alamoudi's name only and made no reference to Alhindi.

After Alhindi moved into the Property, she had no income but received money through international wire transfers to pay the carrying costs on the property. She testified that these money transfers came from her family in Kuwait.

On November 3, 2006, the district court denied Alhindi's petition pursuant to 21 U.S.C. § 853(n) (2000). The court applied the "relation back" doctrine and found that all right, title, and interest in the property forfeited as substitute assets vested in the United States no later than June 30, 2003. The court held that in order to be successful in her petition,

5

Alhindi had to demonstrate by a preponderance of the evidence either that the property vested in her rather than Alamoudi prior to June 30, 2003 or that she was a bona fide purchaser of the property without notice of Alamoudi's crimes. The court held that she failed to demonstrate either.

First, the court reasoned that Alhindi did not obtain any ownership interest in the Property because all rights to Alamoudi's money, which was used to purchase the Property, had already vested in the Government, thereby making the house property of the United States from the moment that it was purchased. The district court further held that Alhindi failed to demonstrate that Alamoudi purchased the house for her; the agreement was not reduced to writing, as required by the Statute of Frauds, and Alhindi had failed to show by clear and convincing evidence that Alamoudi created an oral express trust.

II.

On appeal from the district court's denial of her petition, Alhindi asserts a number of errors including that the court and government violated her right to due process and that the court erred by requiring her to prove the existence of an oral trust by clear and convincing evidence, denying her the rights of a bona fide purchaser for value, and applying the "relation back" doctrine.

6

We have reviewed the record, briefs, and applicable law, and considered the oral arguments of the parties, and we are persuaded that the district court reached the correct result. We therefore affirm on the reasoning of the district court. See United States v. Alamoudi, No. 03-513, slip op. (E.D. Va. Nov. 3, 2006). Alhindi concedes that her only basis for claiming superior title to the United States in the Nancy Hanks Property is her purported status as a bona fide purchaser for value. As the district court explained, however, Alamoudi acquired loans and used his own money to pay the entire purchase price of the Property. As a result, he, and not Alhindi, was the purchaser of the Nancy Hanks Property.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.